STEWART, J.
*309 *999 Carlos C. (hereafter "Charley"[1] ) appeals a dispositional order, entered after the juvenile court sustained allegations that he committed misdemeanor sexual battery ( Pen. Code, § 243.4, subd. (e)[2] ) when he touched the breast of a female high school classmate. Charley argues the court's finding that he committed the offense is unsupported by substantial evidence, because there is insufficient evidence he had the requisite intent when he touched her. He also challenges two conditions of probation as unconstitutionally overbroad: one prohibiting him from using, owning or possessing "any material which [sic ] depicts partial or complete nudity," a question that presents an issue of first impression, and another that permits warrantless searches of his electronic devices.
In the unpublished portions of this opinion, we conclude there is substantial evidence Charley committed sexual battery, and that his challenge to the electronics search condition of probation has been forfeited. In the published portion, however, we agree with Charley and hold that the condition of probation forbidding him from using, owning or possessing depictions of nudity is unconstitutionally overbroad and therefore we will order the condition stricken. As so modified, the court's disposition order will be affirmed.
BACKGROUND
Part I.
These Welfare and Institutions Code section 602 wardship proceedings were originally commenced in October 2013, when Charley, then 14 years old, was charged with two felony counts, including participating in a criminal street gang (§ 186.22, subd. (a)). The original petition was precipitated by an incident that took place at Charley's middle school when he was waiting in an office for his mother to pick him up after he'd been suspended that day *1000 for other behavior; while waiting, he threatened the female school administrator who was supervising him that "you're going to get shot," and made unnerving statements relating to his involvement with the Norteño street gang. Subsequently, after getting arrested for violating the terms and conditions of his initial home detention by bullying a fellow student, the original charges were dismissed, and he admitted to a lesser included offense of having made misdemeanor criminal threats toward the middle school employee. (§ 422.) He was then adjudged a ward of the court and placed on probation.
Approximately seven months later, in August 2015, Charley, then 16 years old, was arrested again after police officers encountered him with a documented Norteño gang member who was on adult probation. Police discovered Charley in possession of marijuana and, when they searched his cell phone, found photos of him wearing gang-related clothing, communications *310 with the gang member and messages and videos relating to marijuana. The incident resulted in Charley admitting to several probation violations (possessing marijuana, possessing gang-related items, and associating with a criminal street gang member), and thereafter he was continued as a ward of the court and reinstated on probation.
Several months later, in March 2016, Charley, still 16, was arrested a third time, again for violating probation. This time, in his second probation violation petition, he was alleged to have twice tested positive for marijuana, repeatedly been late to school and been discharged from his court-ordered counseling program for missing three consecutive weekly sessions. Charley once again admitted the violations and the juvenile court sustained the petition. He was continued as a ward of the court and again reinstated on probation.
These wardship proceedings culminated approximately ten months later, in January 2017, when Charley (by then, age 17) was charged in a supplemental Welfare and Institutions Code section 602 petition with five misdemeanor counts and a violation of probation, stemming from an incident in his high school classroom on January 23 in which he allegedly touched a female student inappropriately, in a sexual manner. Count three concerned the breast touching at issue in this appeal.
Part II.**
*1001 Part III.
At the conclusion of the jurisdictional hearing, after several counts had been dismissed, the juvenile court found that Charley had committed simple battery in connection with the thigh touching of his classmate (a lesser included offense of count two), misdemeanor sexual battery in connection with the breast touching (count three) and a violation of probation (count six).
Thereafter, an uncontested disposition hearing took place on February 27, 2017. The juvenile court continued Charley as a ward of the court, placed him under the supervision of the probation department, initially to be detained at juvenile hall at the department's discretion for a period of 45 days (with credit for 34 days) and thereafter placed back in his mother's home, subject to specified conditions of probation, two of which we address below.
This timely appeal followed.
DISCUSSION
I.***
II.
The Probation Condition Banning Charley from Owning, Using or Possessing Depictions of Nudity Is Unconstitutionally Overbroad (Condition Number 20).
Charley contends the juvenile court erred by imposing a condition of probation that is unconstitutionally overbroad in violation of his First Amendment rights and asks us to strike it, and here we agree.
The challenged provision, condition number 20, states that Charley "shall not own, use, or possess any form of sexually arousing materials which include computer based movies, videos, magazines, books, games, sexual aids or devices, or any material which depicts partial or complete nudity or sexually explicit language, nor frequent any establishment where such items are the *1002 primary commodity for sale." (Italics added.) Charley challenges only *311 the italicized portion of condition number 20 referring to material depicting "partial or complete nudity." He does not challenge the prohibition against owning, using or possessing "sexually arousing materials" or materials with "sexually explicit language," acknowledging (commendably) that conditions with similar language have been upheld against constitutional overbreadth challenge by other courts. (See, e.g., People v. Turner (2007) 155 Cal.App.4th 1432, 1434-1437, 66 Cal.Rptr.3d 803 [possession of "any sexually stimulating/oriented material"]; United States v. Bee (9th Cir. 1998) 162 F.3d 1232, 1234-1235 [possession of "any sexually stimulating or sexually oriented material"].)[5]
The trial courts have greater discretion in formulating the terms of probation for minors than for adults, because minors are " 'more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed.' " ( In re Victor L. (2010) 182 Cal.App.4th 902, 910, 106 Cal.Rptr.3d 584 ( Victor L. ).) Nevertheless, even where minors are concerned, "[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." ( Sheena K ., supra , 40 Cal.4th at p. 890, 55 Cal.Rptr.3d 716, 153 P.3d 282 ; accord, Victor L. , at p. 910, 106 Cal.Rptr.3d 584.)
Although no California court has addressed the issue, the three federal circuits to have done so have, almost uniformly, struck down as unconstitutionally overbroad conditions prohibiting adult offenders from possessing depictions of nudity.[6] (See Simons , supra , 614 F.3d at pp. 483-485 ; see also United States v. Biggins (11th Cir. 2016) 664 Fed.Appx. 789, 792-793 [per curiam]; United States v. Siegel (7th Cir. 2014) 753 F.3d 705, 712-713 [Posner, J.]; United States v. Kelly (8th Cir. 2010) 625 F.3d 516, 521.) The overbreadth of this type of condition is both sweeping and obvious: "By its terms, it would prohibit [defendant] from viewing a biology textbook or purchasing an art book that contained pictures of the Venus de Milo, Michelangelo's David, or Botticelli's Birth of Venus, all of which depict nudity." ( Simons , at p. 483.) Condition *1003 number 20 is not limited to sexually explicit depictions of nudity but literally would prohibit Charley from viewing or possessing "a picture of a baby's buttocks, the nude body of a war victim, or scenes from a culture in which nudity is indigenous ... as well as shots of bathers on a beach." ( Erznoznik v. City of Jacksonville (1975) 422 U.S. 205, 213, 95 S.Ct. 2268, 45 L.Ed.2d 125.) Watching the celebrated television miniseries Roots could spell trouble,[7] or a documentary *312 about the Vietnam War.[8] Even perusing family photographs (a baby's first bath, after all, being a quintessential staple of many family photo albums).
The People's principal argument is not to defend the constitutionality of this condition but, rather, to construe it narrowly. It argues the disputed nudity language "is not overbroad when considered in the context of the condition as a whole, and given its ordinary meaning and interpreted with common sense," because it supposedly contains a limitation that the depiction be "sexually arousing" in the manner of materials found in X-rated movies or adult bookstores. Thus, the People contend, as so construed condition number 20 does not prohibit Charley from viewing displays of nudity in mainstream movies or television shows, or in great works of art or educational text books. We disagree. That interpretation is at odds with the plain text of what the court ordered. The People in fact have it backwards. The nudity language is not limited by the phrase "any form of sexually arousing material," but is a subcategory identified as (and therefore prohibited as) "sexually arousing material." Simply put, the court's order broadly defines the prohibited category of "any form of sexually arousing material" as including "any material which depicts partial or complete nudity." Implicit in the People's interpretation of condition number 20 is a concession, however, that the juvenile court did not intend to restrict Charley's access to all depictions of nudity. So we have little trouble concluding the condition as written must be modified.
The People also stress that Charley committed a sex offense. But sex offenses were involved in many of the federal cases too. (See Simons , supra , 614 F.3d at p. 477 [failing to register as a sex offender]; United States v. Biggins , supra , 664 Fed.Appx. at p. 790 [interstate transportation of a child for prohibited sexual activity and two child pornography offenses]; United States v. Siegel , supra , 753 F.3d at p. 706 [child sex abuse].) The People do not explain how restricting Charley's access to all images of nudity, no matter how benign or *1004 innocuous (or, indeed, artistically or educationally enlightening), will accomplish the state's goal of rehabilitating him.
Finally, the People distinguish the federal authorities on the ground they involve adult probationers whereas the constitutional rights of Charley, a minor, are more circumscribed. And that is true. But there are, of course, limits. "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights ...." ( In re E.O. (2010) 188 Cal.App.4th 1149, 1153, 115 Cal.Rptr.3d 869.) Restricting a minor's access to such a wide range of materials with potential artistic, cultural and/or educational value imposes a significant burden on the minor's constitutional rights with little, if any, discernible impact on the minor's reformation and rehabilitation, even a minor adjudged to have committed a sex offense. (See Victor L ., supra , 182 Cal.App.4th at p. 910, 106 Cal.Rptr.3d 584.) The state's compelling interest in reforming Charley is aptly served, and reasonably so, by that portion of condition number 20 restricting his access to "sexually arousing materials" and materials *313 with "sexually explicit language," terms that, as said, Charley does not challenge.
A condition that goes beyond that, however, to include a total ban on depictions of nudity is, even for a juvenile sex offender, unconstitutionally overbroad. Accordingly, we will modify condition number 20 by striking the challenged nudity language, as the People concede we may do. (See, e.g., People v. Turner , supra , 155 Cal.App.4th at p. 1436, 66 Cal.Rptr.3d 803 [recognizing appellate courts' power to modify probation conditions to render them constitutional]; Sheena K ., supra , 40 Cal.4th at p. 888, 55 Cal.Rptr.3d 716, 153 P.3d 282.)
III.†
*1005 DISPOSITION
The disposition order is modified to strike the language in probation condition number 20 stating "or any material which depicts partial or complete nudity." In all other respects it is affirmed.
We concur.
KLINE, P.J.
MILLER, J.

The parties referred to Carlos C. by his nickname "Charley" throughout the proceedings. To avoid confusion, we will also refer to him by this nickname.

Unless otherwise noted, all further statutory references are to the Penal Code.

See footnote *, ante .

See footnote *, ante .

This issue is cognizable on appeal despite the fact that Charley did not object below to the nudity condition on constitutional overbreadth grounds. (He did object to it, but without specifying the grounds.) That is because it presents a facial constitutional challenge, i.e., a pure question of law we can decide without reference to the particular record developed below that implicates a potential error we can easily remedy. (See In re Sheena K. (2007) 40 Cal.4th 875, 885-889, 55 Cal.Rptr.3d 716, 153 P.3d 282.)

The only outlier of which we are aware is the Seventh Circuit's decision in United States v. Holm (7th Cir. 2003) 326 F.3d 872, which upheld a condition prohibiting the defendant from possessing "material containing nudity," but without analysis. (See id . at p. 877.) We agree with the Eighth Circuit that Holm provides no helpful guidance. (See United States v. Simons (8th Cir. 2010) 614 F.3d 475, 484 (Simons ).)

See Nudity in American television-Wikipedia, The Free Encyclopedia < https://en.wikipedia.org/wiki/Nudity_in_American_television> (as of Dec. 21, 2017) [noting that the miniseries "featured some partial nudity of its cast, usually fleetingly, but more so than other commercial network programming in the US in the 1970s"].

See 7 Things Parents Should Know About 'The Vietnam War' on PBS-< https://geekdad.com/2017/09/7-things-ken-burns-the-vietnam-war/ > (as of Dec. 21, 2017) [alluding to "graphic footage of ... children running down the street naked in flames"].

See footnote *, ante .